IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

---

QUALITY JEEP CHRYSLER, INC.,
n/k/a QUALITY AUTOMOTIVE
SALES AND SERVICE, INC.,

      Plaintiff,

vs.

CHRYSLER GROUP, LLC,

      Defendant,
and

LARRY H. MILLER CORPORATION
- ALBUQUERQUE, d/b/a LARRY H.
MILLER CHRYSLER JEEP DODGE
ALBUQUERQUE,

      Necessary Party Defendant.

No. 1:10-cv-00900-PJK-RHS

---

MEMORANDUM OPINION AND ORDER

---

THIS MATTER comes on for consideration of Defendant Larry H. Miller

Corporation's ("Miller") Motion to Dismiss filed November 18, 2010 (Doc. 31).

Upon consideration thereof, the motion is well taken and should be granted.

The dispute arises out of the bankruptcy proceedings of the predecessor to

Chrysler Group, LLC ("New Chrysler") and subsequent federal legislation.  See

In re Chrysler LLC (Chrysler I), 405 B.R. 84, 108 (Bankr. S.D.N.Y. 2009), aff'd,

576 F.3d 108 (2d Cir. 2009), vacated, 130 S. Ct. 1015 (2009), dismissed as moot, 592 F.3d 370 (2d Cir. 2010) (per curiam).  Quality Jeep Chrysler, Inc. ("Quality") commenced this action on September 25, 2010, against New Chrysler as defendant and Larry H. Miller Corporation ("Miller") as a necessary party defendant.  Doc. 1 (Complaint).

Quality seeks the confirmation and enforcement of an award issued in an arbitration conducted pursuant to Section 747 of the Consolidated Appropriations Act of 2010 ("Section 747"), Pub. L. No. 111-117, 123 Stat. 3034, contending that a letter of intent sent to Quality by New Chrysler following this arbitration was not "customary and usual" within the meaning of Section 747(e) and also was unconscionable, onerous, illusory, and/or commercially unreasonable and therefore outside the meaning of Section 747(e).  Quality further alleges that New Chrysler has breached a duty of good faith and fair dealing in carrying out this award.

Briefly, on April 30, 2009, New Chrysler's predecessor ("Old Chrysler") filed for Chapter 11 bankruptcy protection in the Southern District of New York. Rather than liquidating, Old Chrysler sold substantially all of its assets to a buyer group (Fiat) that ultimately became New Chrysler.  As part of the Purchase Agreement, New Chrysler agreed to accept approximately 2,400 of Old Chrysler's dealer agreements.  The remaining 789 agreements were excluded from the purchased assets.  The sale closed on June 10, 2009.  On May 14, 2009, Old

Chrysler filed a motion with the Bankruptcy Court seeking authorization to reject the 789 dealer agreements that New Chrysler did not agree to purchase. The Bankruptcy Court approved the rejections on June 9, 2009. See In re Old Carco LLC, 406 B.R. 180, 186-87, 212-13 (Bankr. S.D.N.Y. 2009); 11 U.S.C. §§ 105, 365; Bankr. R. 6006. The Bankruptcy Court also determined that New Chrysler would assume the assets of Old Chrysler free and clear of liens and encumbrances. See 11 U.S.C. §§ 105, 363; Bankr. R. 6004.

Quality was one of these rejected dealers. Quality was located down the street from Zangara Dodge, an insolvent Dodge dealer whose franchise was not rejected as part of the bankruptcy. Doc. 1 at 3-4. After closing, Zangara sold its Dodge franchise to Miller, and, on August 26, 2009, New Chrysler entered into a one-year sales and service agreement granting Miller the rights to Chrysler and Jeep lines. Id.

In December 2009, Congress enacted Section 747, which provides,

> A covered dealership that was not lawfully terminated under applicable State law on or before April 29, 2009, shall have the right to seek, through binding arbitration, continuation, or reinstatement of a franchise agreement, or to be added as a franchisee to the dealer network of the covered manufacturer in the geographical area where the covered dealership was located when its franchise agreement was terminated, not assigned, not renewed, or not continued.

§ 747(b). It further provides, "If the arbitrator finds in favor of a covered dealership, the covered manufacturer shall as soon as practicable, but not later than 7 business days after receipt of the arbitrator's determination, provide the

3

dealer a customary and usual letter of intent to enter into a sales and service agreement."  § 747(e).  The remedy is limited and expressly precludes "compensatory, punitive, or exemplary damages to any party."  Id.

About 400 dealers, including Quality, elected to arbitrate.  Doc. 10 at 5. Thirty-two dealers ultimately prevailed.  Doc. 15 at 9.  Quality prevailed in arbitration, and it was ordered that Quality "be reinstated to the Covered Manufacturer's dealer network."  Doc. 1 exhibit C at 2.  Quality was subsequently issued what New Chrysler asserts is a Section 747-compliant Letter of Intent ("LOI").  This was Quality's first dealing with New Chrysler, having had to this point only a contractual relationship with Old Chrysler, which was terminated in the bankruptcy proceeding.  Quality disputes the letter's compliance with Section 747, arguing that the letter issued imposed new and burdensome requirements and, thus, was not "usual and customary."  Quality now seeks, among other things, enforcement of the arbitration award, namely, the issuance of what it deems a customary and usual LOI; declaratory judgment that Section 747 preempts the New Mexico Motor Vehicle Dealer Franchise Act ("State Franchise Act"), N.M. Stat. Ann. §§ 57-16-1 to 16, which in many cases prohibits establishment of an additional franchise for the same line-make in a market area served by an existing dealer, such that Quality legally may be installed at its prior location notwithstanding state law; and an order enjoining New Chrysler from continuing alleged violations of the State Franchise Act, namely, the sale of Jeep

4

and Chrysler line-make cars to Miller.  Doc. 1 at 13-14, 17-22; Doc. 61 at 13-14,

17-24.  The complaint also contains claims for compensatory and punitive

damages against New Chrysler.  Doc. 1 at 14-15, 17, 23; Doc. 61 at 14-15, 17,

24-25.  In sum, Quality insists that it is entitled to be put back in the status quo

ante, as if it were an existing dealership at the time of its termination and that it,

not Miller, is entitled to enforce state law, which, Quality argues, requires New

Chrysler to terminate Miller's dealership.  Doc. 1 at 9, 22-23; Doc. 61 at 9, 23-24;

Doc. 44 at 10-11.

Often, a motion to join a necessary party is made by defendants; here,

Plaintiff brought Miller in as a necessary party but without asserting independent

claims against Miller.  Miller seeks dismissal from the suit on the grounds that (1)

Quality's franchise was lawfully terminated in the Chrysler bankruptcy, which

termination cannot be collaterally attacked in this proceeding; (2) Quality had no

franchise when Miller was appointed as a Jeep-Chrysler dealer and therefore was

not an existing dealer under the State Franchise Act; (3) Section 747 does not

provide Quality with any relief against Miller; (4) Miller was a protected, existing

dealership pursuant to the State Franchise Act and was entitled to renewal of its

franchise; (5) Quality's proposed injunction violates New Mexico law; and (6)

Miller is not a necessary party under Fed. R. Civ. P. 19.  Quality responds that the

court should only consider whether Miller is a necessary party under Fed. R. Civ.

P. 19(a), and contends that the other grounds in the motion are essentially Fed. R.

5

Civ. P. 12(b)(6) arguments better left to Chrysler.  The court concludes that Miller is not a necessary party to this action and that, because Quality otherwise asserts no claims against Miller, Miller should be dismissed as a party-defendant.

## Discussion

The first issue under Rule 19 is whether in a party's absence the "court cannot accord complete relief among existing parties."  Fed. R. Civ. P. 19(a)(1)(A); Sac and Fox Nation of Missouri v. Norton, 240 F.3d 1250, 1258 (10th Cir. 2001).  The second issue is whether Miller claims an interest relating to the subject of the action and whether Miller "is so situated that disposing of the action in [Miller's] absence may: (i) as a practical matter impair or impede [Miller's] ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."  Fed. R. Civ. P. 19(a).

Miller's alleged legal interests in this case inhere in both federal and New Mexico state law.  "Although in a diversity action the 'interest' of an 'outside party' may involve state law, the rule relating to joinder of persons needed for just adjudication is a rule of procedure and, therefore, federal law is applicable in determining which parties are, in fact, indispensable."  Wright v. Albuquerque Auto-Truck Stop Plaza, Inc., 591 F.2d 585, 587 (10th Cir. 1979) (citations omitted).

6

The Tenth Circuit has interpreted Rule 19 to exclude only claimed interests that are "patently frivolous." Davis v. United States (Davis II), 343 F.3d 1282, 1291 (10th Cir. 2003) (quoting Davis v. United States (Davis I), 192 F.3d 951, 959 (10th Cir. 1999)); see, e.g., Radian Asset Assur., Inc. v. College of the Christian Brothers of N.M., No. 09-0885, 2010 WL 965515, at *5, 8  (D.N.M. Feb. 11, 2010).  Thus, "the underlying merits of the litigation are irrelevant" to a Rule 19 inquiry, Citizen Potawatomi Nation v. Norton, 248 F.3d 993, 998 (10th Cir. 2001), except to the extent that the claims are frivolous, Davis II, 343 F.3d at 1291 (quoting Davis I, 192 F.3d at 959).  This is because Rule 19 "does not require the absent party to actually possess an interest; it only requires the movant to show that the absent party claims an interest relating to the subject of the action." Citizen Potawatomi Nation, 248 F.3d at 998 (quoting Davis I, 192 F.3d at 998).

That Quality has asserted no claims against Miller is not determinative of the Rule 19 inquiry.  See Sierra Club v. Hodel, 848 F.2d 1068, 1077 (10th Cir. 1998), overruled on other grounds by Vill. of Los Ranchos de Albuquerque v. Marsh, 956 F.2d 970 (10th Cir. 1992).  But neither does the lack of claims against Miller preclude Miller from arguing that it is not a necessary party because Quality has made no nonfrivolous claims for relief flowing through Chrysler implicating Miller's interests.  The predicate of Quality's claims as they pertain to Miller is that New Chrysler's franchise agreements with Miller and Quality are

7

mutually exclusive.  The focus of our Rule 19 inquiry in this case is thus whether
complete relief may be accorded between New Chrysler and Quality in the
absence of Miller and whether any remedies available to Quality are mutually
exclusive of other obligations of New Chrysler in which Miller has an interest.

A.     Miller is not a necessary party to Quality's Section 747 claims.

       Miller's presence in this action is clearly premature, dependent upon a
finding that New Chrysler did not comply with its Section 747 obligations or the
arbitrator's award, and the court ordering the broad relief suggested by Quality.
But more problematic and determinative of our Rule 19 inquiry is Quality's
position under Section 747.  Nothing in the plain language of the statute or its
legislative history implicates the interests of third-party dealers who entered into
franchise agreements following the Old Chrysler bankruptcy and prior to the
operation of Section 747 and its arbitration provisions.  As noted, the statute
merely provides for "continuation, or reinstatement of a franchise agreement, or
to be added as a franchisee to the dealer network of the covered manufacturer in
the geographical area where the covered dealership was located when its franchise
agreement was terminated, not assigned, not renewed, or not continued."
§ 747(b).  An arbitrator is to consider whether "the covered dealership should be
added to the dealer network of the covered manufacturer."  § 747(d).  The remedy
provision provides that, given a dealer's successful invocation of the procedure,
the covered manufacturer must "provide the dealer a customary and usual letter of

intent to enter into a sales and service agreement."  § 747(e).  The arbitrator could

not and did not require more.  Doc. 1 app. 4 at 2-3.

Quality argues that Section 747 requires this court "to place [Quality] again

in a former state or position; to restore," which requires injunctive relief placing

Quality in its status quo ante position prior to the termination of its dealership as

the only local Chrysler dealership in the area.  Doc. 44 at 4.  However, while

Quality argues that this relief requires this court to terminate the Miller franchise,

the statute simply does not state or imply such a requirement.  Cf. In re Motors

Liquidation Co., 2010 WL 4449425, at *5 (S.D.N.Y. 2010) (rejecting argument

that statute contained any right to appeal arbitrator's decision).  Neither is

Quality's reliance on the legislative history to Section 747 persuasive.  Moreover,

given the lapse of time between the bankruptcy court's rejection of many

dealerships and the enactment of Section 747, it seems passing strange that the

extreme remedy of terminating interim franchises would be required–and

certainly not on this language.  Therefore, the court concludes that complete relief

in this action may be accorded in the absence of Miller.  See 4 Moore's Federal

Practice § 19.03[2][b], at 19-39 to 19-41 ("Properly interpreted, the Rule is not

invoked simply because some absentee may cause future litigation . . . .  The fact

that the absentee might later frustrate the outcome of the litigation does not by

itself make the absentee necessary for complete relief." (footnotes omitted)).

Next, Quality's assertion that Miller claims an interest relating to the

subject of the action is purely speculative. While in form the franchise to which Quality asserts it is entitled might not be the same franchise in which Miller has an interest, see Radian Asset Assur., Inc., 2010 WL 965515, at *8, Quality appears to assert that in substance this is precisely the case. However, Section 747 does not address the rights of third party dealers who acquired their franchises prior to its passage. Nothing in Section 747 suggests that Congress diluted the rights of New Chrysler vis-a-vis these existing franchisees. See, e.g., LaBelle Chevrolet, LLC v. General Motors, LLC, 705 F. Supp. 2d 97, 100 (D. Mass. 2010) ("Section 747 merely provides that dealers may seek, through binding arbitration, reinstatement of their franchise agreements. It does not, however, amend the terms of those agreements, nor does it provide LaBelle with a right to be free from near-by competition."). And, regardless, Quality cannot escape the bankruptcy court's orders, which rejected the Quality franchise and approved the sale of Old Chrysler's assets without such encumbrances prior to enactment of Section 747.

B.     Miller is not a necessary party to Quality's claim for declaratory relief.

_____Quality's claim for declaratory judgment likewise does not implicate Miller as a necessary party. In addition to its arguments, addressed above, urging termination of Miller's franchise based on Section 747, Quality essentially argues that Miller may potentially claim that the federal statute's remedy is a violation of state law and, therefore, Miller is a necessary party. However, the fact that Miller

10

might potentially choose to challenge the legal basis of an order here is too tenuous and contingent to render Miller a necessary party under Rule 19.  Here, Quality seeks declaratory judgment relief on a purely legal question.  There is no reason why the court cannot accord complete relief in Miller's absence.

Moreover, the fact that a decision in this case could be adverse to Miller's general interests–and therefore inspire Miller to take some action against New Chrysler at some point in the future–is distinct from a claim related to the subject matter of this action, namely Quality's franchise rights; and this action for declaratory judgment does not as a practical matter impair Miller's ability to protect its more general interests or leave New Chrysler subject to the risk of incurring inconsistent obligations with respect to Quality's due franchise rights for the purposes of Rule 19.  See Begay v. Public Serv. Co. of N.M., 710 F. Supp. 2d 1161, 1182-84 (D.N.M. 2010) (discussing distinction between inconsistent obligations and inconsistent adjudications).

C.     Miller is not a necessary party to Quality's state law claims.

Outside of Section 747, Quality's claims are limited to those asserted under the State Franchise Act.  New Mexico's Act prohibits

> establish[ment] [of] an additional franchise . . . but excluding the relocation of existing franchises, for the same line-make in a relevant market area where the same line-make is presently being served by an existing motor vehicle dealer if such addition would be inequitable to the existing dealer; provided, however, that the sales and service needs of the public shall be given due consideration in determining the equities of the existing dealer. . . . provided, further,

11

that the manufacturer, distributor, or representative shall give a ninety-day written notice by registered mail to all same line-make dealers in a relevant market area of its intention to establish an additional franchise.

N.M. Stat. Ann. § 57-16-5(P).

Quality's claims concerning the State Franchise Act are twofold. Quality seeks a declaratory judgment that Section 747 preempts state dealer laws to the extent that third-party dealers awarded franchises during the period of time after the Old Chrysler bankruptcy and prior to continuation, reinstatement, or addition of dealers under Section 747 would have viable state-law claims to challenge the remedies. But Quality also seeks to enforce the Act, arguing that Quality qualified as an "existing dealer" under New Mexico law and, thus, New Chrysler's renewal of Miller's franchise violated the State Franchise Act.

In response, Miller asserts that the relief under the Act sought by Quality would amount to an unlawful retroactive application of the state statute. Doc. 31 at 6-7. See generally Ronald T. Coleman, Jr. & David B. Darden, The Constitutionality of Retroactive Franchise Laws, 21 Franchise L.J. 13 (2001). Quality argues that awarding an injunction to prevent the renewal of Miller's franchise on equitable grounds would not amount to a retroactive application of the state statute, to the extent that the inequitable conduct occurred well after the passage and most recent amendment of the state law. Doc. 44 at 10-11. But the question presented by Quality's claims is really distinct from whether federal

12

legislation may attach new legal consequences to actions completed prior to enactment.  See Landgraf v. USI Film Prods., 511 U.S. 244, 265, 269-70 (1993).  Rather, Quality argues that the term "reinstate" requires its existing dealer status to relate back to the termination of its franchise agreement, rendering it an "existing dealer" for application of the State Franchise Act to New Chrysler's dealings with Miller.

The issue raised by Quality's claim is the meaning of "existing dealer" under New Mexico law–specifically, whether the state law rights of a dealer that is reinstated or added to the dealer network pursuant to Section 747 relate back to the termination of its franchise pursuant to bankruptcy order.  As stated, Quality would characterize the series of transactions performed by Old and New Chrysler as an unlawful transfer of its franchise.  But the indisputable effect of the Old Chrysler bankruptcy was to terminate Quality's franchise and allow Old Chrysler's assets to be sold.  New Chrysler was then free to establish franchises within the territories covered by Old Chrysler's previous agreements.  In re Old Carco LLC, 442 B.R. 196, 209-13 (S.D.N.Y. 2010).  Thus, by the decree of the bankruptcy court, Quality simply was not an "existing dealer" under the Act at the time Miller entered into its franchise agreement.

Finally, given the court's construction of Section 747, it is not necessary to reach the contention that the statutory protections of N.M. Stat. Ann. §§ 57-16-5(F), 57-16-9, prohibiting termination, cancellation or non-renewal of a dealer

13

franchise without cause, and § 57-16-5(D), prohibiting refusal to deliver vehicles without cause, somehow necessitate the presence of Miller in this lawsuit.

NOW, THEREFORE, IT IS ORDERED, ADJUDGED, and DECREED that Defendant Larry H. Miller Corporation's ("Miller") Motion to Dismiss filed November 18, 2010 (Doc. 31) is granted, and Miller is dismissed as a party-defendant.

DATED this 22nd day of March 2010, at Santa Fe, New Mexico.

*Paul Kelly Jr.*
United States Circuit Judge
Sitting by Designation

Counsel:

Stanley N. Hatch and Jesse C. Hatch, Hatch Law Firm, LLC, Albuquerque, New Mexico, and Michael J. Dommermuth and Karl D. Kaesemeyer, McGloin, Davenport, Severson and Snow Professional Corporation, Denver, Colorado, for Defendant Larry H. Miller Corporation - Albuquerque.

Henry M. Bohnhoff, Leslie McCarthy Apodaca, and Nicholas M. Sydow, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, New Mexico, for Plaintiff Quality Jeep Chrysler, Inc.

14