IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| QUALITY JEEP CHRYSLER, INC., n/k/a QUALITY AUTOMOTIVE SALES AND SERVICE, INC.,<br><br>    Plaintiff,<br><br>vs.<br><br>CHRYSLER GROUP, LLC,<br><br>    Defendant,<br>and<br><br>LARRY H. MILLER CORPORATION - ALBUQUERQUE, d/b/a LARRY H. MILLER CHRYSLER JEEP DODGE ALBUQUERQUE,<br><br>    Necessary Party Defendant. | No. 1:10-cv-00900-PJK-RHS |

MEMORANDUM OPINION AND ORDER

THIS MATTER comes on for consideration of pending discovery motions: (1) Quality Jeep Chrysler, Inc.'s ("Quality") Emergency Motion to Permit Use of Materials Produced During the Parties' Arbitration filed February 11, 2011 (Doc. 85), and (2) Chrysler Group LLC's ("New Chrysler") Objection Regarding Magistrate's Discovery Order filed February 3, 2011 (Doc. 79). Upon consideration thereof,

A.      Arbitration Documents.

Quality seeks a discovery order authorizing Quality to use litigation documents furnished by New Chrysler in the earlier arbitration proceedings. See Fed. R. Civ. P. 26(c). Concerned about the upcoming expert report deadline, Quality requested that the court extend the deadline until ruling on this motion. Doc. 87. Thus, Quality has two weeks from the date of entry of this order to designate any expert on damages; other parties have 30 days.

Quality's motion is well-taken to the extent that the underlying arbitration documents are relevant to Quality's claims in this lawsuit, such as the claim that the letter of intent furnished was not usual and customary. Fed. R. Civ. P. 26(b)(1); In re Cooper Tire & Rubber Co., 568 F.3d 1180, 1192 (10th Cir. 2009) (discovery that is relevant to claims and defenses is available as of right while broader discovery "relevant to the subject matter involved in the action" may require court determination of good cause). As New Chrysler points out, however, the Section 747 proceedings involved some different issues to those presently before this court, see § 747(d), so it is highly unlikely that all the material provided by New Chrysler is relevant to claims or defenses. Regardless, to the extent that the same documents have been produced as part of New Chrysler's initial disclosures or pursuant to the magistrate judge's discovery order as modified below, Quality may use the documents. For those documents that are left, the documents should be returned pursuant to the confidentiality order, Doc.

2

85-1 at 6, ¶ 12, and Quality may file a motion to compel if there is disagreement.[1]

B.   Objection to the Magistrate Judge's January 27, 2011 Order (Doc. 28).

The court now considers New Chrysler's objections to the magistrate judge's order on Quality's motion to compel. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). The court stayed the magistrate judge's order insofar as it requires New Chrysler to produce the contested categories of documents:

1. Sales and Service Agreements and correspondence related to those Sales and Service Agreements.
2. Letters of Intent relating to the relocation of an existing dealership or changes to the types of vehicles sold by an existing dealership.
3. Information relating to the lobbying and enactment of Section 747.

Doc. 79 at 3. The court also instructed New Chrysler to produce information relevant to Quality's claims including that New Chrysler failed to provide its customary and usual letter of intent and such other information reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1).

The court must defer to the magistrate judge's non-dispositive discovery rulings unless clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(a); Hutchinson v. Pfeil, 105 F.3d 562, 566 (10th Cir. 1997). The

---

[1] The court notes that Quality and New Chrysler agreed upon and the magistrate judge subsequently entered a stipulated protective order. Doc. 75.

court does not consider material not made available to the magistrate judge, but subsequent to the magistrate judge's ruling, the court granted a motion to dismiss (to Defendant Larry H. Miller - Albuquerque) explaining that the predicate of many of Quality's claims–that it was entitled to be put back in the same position as it was immediately prior to its rejection on May 13, 2009–was untenable.  Doc. 99.  Neither Section 747 nor the arbitrator's decision entitled Quality to status quo ante relief, nor could they magically render Quality an existing dealer entitled to enjoin the operation of a replacement dealer under the New Mexico Motor Vehicle Dealers Franchising Act.  To conclude otherwise would be to abrogate the bankruptcy court's rejection of Quality and sale of Old Chrysler's assets free and clear of encumbrances, raising significant separation of powers and due process concerns.  See Plaut v. Spendthrift Farm, Inc., 514 U.S. 211, 228 (1995); Hodges v. Snyder, 261 U.S. 600, 603 (1923); Johnston v. Cigna Corp., 14 F.3d 486, 491 (10th Cir. 1993) (citing Hodges, 261 U.S. at 603).

As one district court observed:

> Section 747 was very limited in scope.  It allowed former franchisees to seek review of their rejection as a Chrysler franchisee before an AAA arbitrator in binding arbitration.  It granted such former franchisees the right to seek to be added as a franchisee to the New Chrysler dealer network in the geographical area where it was located when its franchise was rejected.  Relief was limited to a letter of intent to enter into a sales and service agreement, subject to certain other conditions and the rights of other dealers under various state dealer laws.  Other relief, including damages, was prohibited. The statute's authority for such arbitrations was quite short-lived–180 days, plus a 30-day extension for good cause, from

> its enactment, and section 747 is no longer in effect. See section
> 747(d). The procedure and relief were carefully crafted to provide
> for a prompt and final decision as to each rejected dealership so that
> all parties could move forward quickly. Congress did not provide in
> section 747 any authority under which a party can appeal, move to
> vacate, or move to stay the arbitrator's determination, although it
> certainly could have done so. Where Congress does not provide
> relief that it clearly knows how to provide, it is understood to have
> deliberately chosen not to provide that relief. See Meghrig v. KFC
> Western, Inc., 516 U.S. 479, 485 (1996) ("Congress . . .
> demonstrated in CERCLA that it knew how to provide for the
> recovery of cleanup costs, and . . . the language used to define the
> remedies under RCRA does not provide that remedy.").

Tysinger Motor Co., Inc. v. Chrysler Group, LLC, No. 3:10CV554, 2011 WL 63866, at * 3 (E.D. Va. 2011). Though Tysinger concerned the extent of judicial review of arbitration awards (none), its evaluation of the scope of Section 747 comports with this court's review.

1.   Sales and Service Agreements.

Under Section 747(e), New Chrysler was obligated to provide a "customary and usual letter of intent to enter into a sales and service agreement." A letter of intent (LOI) precedes a sales and service agreement (SSA) and spells out conditions that dealer candidates must meet to become a dealer. The sales and service agreement is the ultimate agreement setting forth the operating agreement of the parties. New Chrysler argues that the SSAs that New Chrysler has entered into simply are not relevant to establishing whether New Chrysler's letter of intent was Section 747-compliant. Doc. 79 at 9; Doc. 92 at 9. Quality responds

5

that New Chrysler has not required LOIs from dealers which were assumed during the bankruptcy or from replacement dealers and, therefore, there really is no standard LOI; New Chrysler has a practice of using letter agreements, addenda and "settlement agreements" to modify the LOIs and SSAs.  Doc. 86 at 13-14.

The fact that New Chrysler assumed existing dealers without an LOI or modification of the SSA is not relevant to what constitutes a usual and customary LOI for a new dealer.  No letter of intent was required for the assumed dealers.  Essentially, Quality's position is that it should be in the same position as the 2,200 assumed dealers and that its prior SSA terms should prevail.  Doc. 86 at 7.  Yet this is untenable: it ignores the bankruptcy court's rejection of its franchise, the sale of assets free and clear to New Chrysler, and the language of Section 747.

The court cannot ignore that the remedy Congress provided to rejected dealers included an LOI provision.  The magistrate judge reasoned that the SSAs of the 2,200 assumed dealers were relevant to show that New Chrysler possibly drafted Quality's LOI so as to contain terms that no rational business person would accept.  Doc. 78 at 3.  But this is comparing apples and oranges.  Nothing suggests that New Chrysler is bound by the prior SSAs (like original sin) in drafting LOIs for dealers added to the network.  Though the magistrate determined that it would not constitute an undue burden to produce such information, it did so on the presumption that New Chrysler would have to produce it in other litigation, and that does not appear to be the case; nor is it

6

adequate justification given the labor of extracting such information.  Doc. 78 at 3.

Given that New Chrysler was required to provide a usual and customary LOI to enter into an SSA, what is relevant is how New Chrysler has gone about adding new dealers to the network.  Accordingly, the court will modify the magistrate judge's order on motion to compel to require discovery into:

- All SSAs for new (including replacement and those added pursuant to § 747) dealers that New Chrysler has proposed or entered into since its inception (June 10, 2009).

- All communications and other documents (including addenda, side agreements, letter agreements and "settlement agreements") related to the above SSAs.

The parties should submit a proposed order to the court within ten days of the date of entry of this order containing acceptable deadlines to implement this ruling.

2.  <u>Letters of Intent Concerning Dealer Relocations and Changes to Types of Vehicles Sold.</u>

According to New Chrysler, it issues three types of LOIs: (1) where an existing dealer is relocating; (2) where an existing dealer is adding a new vehicle line; and (3) where a new dealer is being added to the network.  Doc. 92 at 10.  In the first two instances, the dealer is already in the dealer network.  Quality contends that "usual and customary" means that it was entitled to an LOI that would be usual and customary for an existing dealer and that its discovery needs

7

should not be subject to its opponent's theory of the case (correct).  Doc. 86 at 18-19.  New Chrysler responds that it is a different company than Old Chrysler, that Quality has not been a dealer of Old Chrysler for almost two years, and that Quality simply has never had an agreement with New Chrysler.  Doc. 92 at 11.

The court agrees that categories (1) and (2) bear no relevance to this case.  Again, the court cannot ignore that Quality is a rejected dealer, does not have a relationship with New Chrysler, and simply is not an existing dealer.

3.      Lobbying Materials.

Quality sought documents and communications, internal or external, relating to Section 747 and any other proposed legislation concerning rejected dealers.  This information, it is argued, is relevant to a proper interpretation of Section 747 and tends to show that (1) New Chrysler assumed the risk of inconsistent obligations in entering into an August 26, 2009, SSA with Miller given that Quality might be added to the dealer network and (2) that Quality may be entitled to equitable relief as well as (3) punitive damages.   Docs. 38 at 18-19; 58 at 10; 86 at 21.  The court is in agreement with New Chrysler that this information is completely irrelevant (nor will it lead to the discovery of relevant information) in deciding this case.  The court will decide the law; that New Chrysler took lawful action to replace dealers after the bankruptcy (regardless of pending legislation) does not suggest inequity, let alone exposure to punitive damages.  The court expresses no opinion on the First Amendment issues which

such a request may involve.  See Perry v. Schwarzenegger, 591 F.3d 1147, 1159-66 (9th Cir. 2010).

NOW, THEREFORE, IT IS ORDERED, ADJUDGED, and DECREED that

(1) Quality Jeep Chrysler, Inc.'s Emergency Motion to Permit Use of Materials Produced During the Parties' Arbitration filed February 11, 2011 (Doc. 85), is granted to the extent the materials are relevant; should the parties disagree, the materials are to be returned and Quality may file a motion to compel;

(2) Chrysler Group LLC's Objection Regarding Magistrate's Discovery Order filed February 3, 2011 (Doc. 79) is granted in part and denied in part,

(3)  Chrysler Group LLC's Emergency Motion for a Stay of Portions of Magistrate Judge Schneider's January 27, 2011, filed February 3, 2011 (Doc. 80) is now moot.

DATED this 22nd day of March 2010, at Santa Fe, New Mexico.

*Paul Kelly, Jr.*
United States Circuit Judge
Sitting by Designation

Counsel:

Henry M. Bohnhoff and Leslie McCarthy Apodaca, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, New Mexico, for Plaintiff Quality Jeep Chrysler, Inc.

Larry J. Montano and Bradford C. Berge, Holland & Hart, LLP, Santa Fe, New Mexico, and Hugh Q. Gottschalk, Wheeler Trigg O'Donnell LLP, Denver, Colorado, for Defendant Chrysler Group, LLC.